**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

REBECCA BOONE, et al.,

        Plaintiffs,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

        Defendant.
_____/

CASE NO. 2:14-cv-12281

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Before the Court is Defendant Portfolio Recovery Associates, LLC's Motion to Dismiss. (Doc. No. 12). Plaintiffs, Rebecca Boone and Gary Smith, filed this putative class action against Defendant alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and the Michigan Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.251, *et seq.* Plaintiffs also filed a motion for class certification. (Doc. No. 6). The Court has reviewed the briefs and finds that oral argument will not aid in the resolution of this matter. See E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Defendant's motion to dismiss is **GRANTED**, Plaintiffs' motion for class certification is **DENIED** as moot, and the case is **DISMISSED**.

**I. INTRODUCTION**

Plaintiffs Rebecca Boone and Gary Smith are residents of Michigan. Defendant Portfolio Recovery Associates, LLC ("PRA") is a Virginia corporation in the business of purchasing and collecting defaulted consumer debts. On April 4, 2014, PRA sent a collection letter to Smith. (Am. Compl. at ¶ 29, ECF No. 5). The letter stated, "This letter is from a debt collector and is an attempt to collect a debt. Any information

obtained will be used for that purpose." (Id.) Further, the letter identified "GE Capital Retail Bank" as the "Original Creditor" and PRA as the "Creditor to Whom Debt is Owed." (Id. at ¶ 30).

On April 8, 2014, PRA sent an identical collection letter to Boone, which stated: "This letter is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." (Am. Compl. at ¶ 27, ECF No. 5). The letter further identified "Citibank N.A." as the "Original Creditor" and PRA as the "Creditor to Whom Debt is Owed." (Id. at ¶ 28).

Plaintiffs allege that PRA sent such letters to numerous Michigan consumers, which Plaintiffs seek to represent in this class action. Specifically, Plaintiffs seek to represent two classes, one applicable to each statutory framework. The FDCPA class is defined as:

> (i) all persons with a Michigan address that have received the collection letter that is in violation of 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692e(A)(2), and 15 U.S.C. § 1692e, (ii) in which a demand for payment is made through a letter from Defendant similar to Exhibit 2, (iii) the debt collector also claims to be the creditor and the debt collector, (iv) which letter was sent during the one year period immediately preceding the filing of this complaint and the date of class certification.

(Id. at ¶ 39).

The MCPA class is defined as:

> (i) all persons with a Michigan address that have received the collection letter that is in violation of MCLA 445.252(e), MCLA 445.252(f) and (q), (ii) in which a demand for payment of a debt through a letter from Defendant similar to Exhibit 2, and (iii) which letter was sent during the six year period immediately preceding the filing of this complaint and the date of class certification.

(Id. at ¶ 40).

2

Plaintiffs allege that PRA violated federal and state law by representing that it is both the creditor and debt collector in the letters sent to Michigan consumers. Further, they assert that PRA is a "debt collector" under the FDCPA and MCPA because it purchased the "junk, charged-off debt[s] in default." (Id. at ¶ 32). It is alleged that PRA is also acting as a "creditor" based on the representation in the letters that PRA is the "Creditor to Whom Debt is Owed." (Id. at ¶ 31). Defendant now moves to dismiss the amended complaint.

## II. STANDARD OF REVIEW

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if "'it fails to give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A complaint need not contain detailed factual allegations, but it must include more than labels and legal conclusions. Id. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. If the complaint contains well-pleaded factual allegations, the court must assume their veracity; but it need not assume the truth of bare legal conclusions. Id. "[W]here the well-pleaded facts do not permit the court to infer more

3

than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**III. ANALYSIS**

The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The standard applicable to FDCPA claims is "whether the 'least sophisticated consumer' would be misled by defendant's actions." Wallace v. Washington Mut. Bank, F.A., 683 F.3d 323, 326-27 (6th Cir. 2012) (quoting Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir. 2006)). However, the standard also "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008) (citation omitted).

Similarly, the "[MCPA] prohibits abusive collection efforts only with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" Levant v. Am. Honda Fin. Corp., 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005) (quoting Mich. Comp. Laws § 445.251(a)). The MCPA defines "Collection agency" as "a person directly or indirectly engaged in soliciting a claim for collection." M.C.L. § 445.251(b). "Creditor" is defined as:

> [A] person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer [of] a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or transferor of the debt shall continue to be considered the creditor or the principal for purposes of this act.

§ 445.251(e).

Courts generally look to the FDCPA in analyzing claims under the MCPA. See Gamby v. Equifax Info. Servs. LLC, 462 F. App'x 552, 556 (6th Cir. 2012) ("A parallel federal statute, the FDCPA, provides further guidance."). Moreover, where a plaintiff's MCPA claims mirror those alleged under the FDCPA, courts need not address those claims separately. See Lovelace v. Stephens & Michaels Assocs., Inc., 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (noting that because the plaintiff brought duplicate claims under the FDCPA and MCPA, these claims "need not be addressed separately").

### A.   FDCPA & MCPA Claims

Here, Plaintiffs' FDCPA and MCPA claims are duplicative, i.e., that PRA violated the FDCPA and MCPA by sending collection letters that purportedly identified it as both the creditor and debt collector. The letters sent to Boone and Smith are attached to the complaint, and thus the Court may consider them in analyzing Defendant's motion to dismiss. See Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) (exhibits attached to the plaintiff's complaint are properly considered by the court when presented with a motion to dismiss). After review, even accepting Plaintiffs' allegations as true, the Court finds that the letters do not violate either statute.

Plaintiffs are correct that representing oneself as both the creditor and the debt collector of an outstanding debt on a statement of account is a potential violation of § 1692e of the FDCPA. See Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 613 (6th Cir. 2009) (finding genuine dispute of fact regarding whether validation notices sent by debt collector, which resembled credit card statements sent by the original creditor,

5

would mislead the least sophisticated consumer). In this circumstance, the consumer is misled into believing that the statement of account originated from the original creditor, not from a debt collector attempting to recover on the debt. Importantly, debt collectors are subject to the mandates of the FDCPA; creditors are not. See Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003) (noting that "creditors are not subject to the FDCPA when collecting their accounts").

PRA is clearly a debt collector as defined in both the FDCPA and the MCPA. Plaintiffs' complaint also alleges that PRA is a "debt collector." (Am. Compl. at ¶ 11, ECF No. 5). It further alleges that PRA "is a purchaser of consumer charged-off accounts that are in default when the Defendant purchases them." (Id. at ¶ 12). Moreover, the complaint alleges that PRA purchased the "junk" debts at issue in this case, and "PRA is therefore a debt collector at the time it purchased the debt[s] and now." (Id. at ¶ 32). The letters sent by PRA state, "This letter is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." (Id. at Exs. 1, 2). PRA is identified as the "Creditor to Whom Debt is Owed," and GE Capital Retail Bank is explicitly listed as the "Original Creditor" in one of the letters (Id.)

Because PRA is a debt collector subject to the FDCPA, it faces potential liability if the letters are misleading or confusing to the least sophisticated consumer. However, the relevant case law demonstrates that the letters sent by PRA do not violate any provisions of the statute. For example, in Myers v. Asset Acceptance, LLC, 750 F. Supp. 2d 864, 868 (S.D. Ohio 2010), the plaintiff argued that the defendant violated the FDCPA by sending a statement that "looked like a monthly statement from the original

6

creditor." The statement included the defendant's logo and address, account number, the plaintiff's last payment, date of delinquency, and the date the debt was purchased by the defendant. Id. It further stated: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR." Id. (emphasis in original). The court found the statement did not violate the FDCPA, pointing out that

> the statement here notes explicitly the date of delinquency on the debt and the date [the defendant] purchased the debt. This reflects when the debt to [the defendant] accrued. Additionally, rather than only including the word assignee as in Hartman, the statement here stated in all capital letters that it was from a debt collector. *There is no more explicit way to state that [the defendant] is a debt collector.*

Id. at 869 (emphasis added). Thus, the least sophisticated consumer would understand that the statement is from a debt collector. Id. at 870.

Like Myers, the letters sent by PRA explicitly identify it as the debt collector and contain a conspicuous statement that the communications are sent from a debt collector. The fact that PRA is identified as the "Creditor to Whom Debt is Owed" does not tip the scale in favor of Plaintiffs. This language is not to be read in isolation, and Plaintiffs may not ignore the remaining context of the letters. See id. ("No one part, such as the debt collector language, should be read in isolation. Instead, the statement must be regarded as a whole."). Moreover, the letters identify the original creditor of the debt, which Plaintiffs should recognize. This information makes it clear that PRA is not a creditor, but a debt collector who purchased the debt solely for collection purposes. Like the court in Myers noted, "[t]here is no more explicit way [for PRA] to state that [it] is a debt collector." Id. at 869. Even the least sophisticated consumer would not be misled or confused by the letters.

7

In addition, contrary to Plaintiffs' argument, the letters do not indicate that PRA will continue to service the debt like a creditor merely because a "Quality Service Specialists" telephone number is listed. In their response, Plaintiffs vigorously argue that PRA is a debt collector, not a creditor, but then strangely proceed to argue that PRA is also acting like a creditor because it is continuing to service the debt. (Pl.s' Resp. at 12-13, ECF No. 13). However, Plaintiffs' allegations make it clear that PRA purchased the debt for collection purposes only. There are no allegations that PRA is in the business of extending credit on existing lines acquired from other creditors. Regardless, this would not alter the Court's decision, as the letters do not violate the FDCPA or MCPA in any way. Thus, Plaintiffs failed to state a claim in their amended complaint.

### B. Request to Amend

Last, Plaintiffs argue that PRA is a "flat-rater," whereby:

> a creditor, in the process of collecting its own debts, hires a third party for the express purpose of representing to its debtors that the third party is collecting the creditor's debts, and the third party engages in no *bona fide efforts* to collect those debts, the false name exception exposes the creditor to FDCPA liability.

(Pl.s' Resp. at 14-15, ECF No. 13). Plaintiffs failed to allege any facts that would support such a scheme, and thus they request permission to amend their complaint to include such allegations. However, the complaint repeatedly alleges that PRA is a debt collector in the business of purchasing "junk" debts from other creditors for the sole purpose of collection. Indeed, the attached letters support such a conclusion. This theory undermines Plaintiffs' own complaint, and even if such allegations were included, the Court cannot imagine any set of facts to support such a claim, especially where

PRA is actively attempting to collect on the debts involved in the case at hand. In addition, Plaintiffs failed to properly move for leave to amend the complaint and failed to attach the proposed amended pleading. See E.D. Mich. L.R. 15.1 ("A party who moves to amend a pleading shall attach the proposed amended pleading to the motion."). Thus, the request to amend is denied, as it would be futile to Plaintiffs' case and entirely inconsistent with its original claims. See Foman v. Davis, 371 U.S. 178, 182 (1962) (leave should be denied if amendment would be an exercise in futility).

### IV. CONCLUSION

Accordingly, Defendant's motion to dismiss is **GRANTED** and Plaintiffs' motion for class certification is **DENIED** as moot. The case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Date: October 27, 2014                     s/Marianne O. Battani
                                                                   MARIANNE O. BATTANI
                                                                   United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 27, 2014.

                                                                                s/ Kay Doaks
                                                                                Case Manager